**United States District Court**
For the Northern District of California

1

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7

8            FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   SAMIH HUSSEIN ZABADI,                    No. C 05-03335 WHA

11          Petitioner,

12      v.                                    **ORDER GRANTING
                                              PETITION FOR WRIT**
13   MICHAEL CHERTOFF, Secretary,             **OF HABEAS CORPUS**
     Department of Homeland Security; ALBERTO
14   GONZALES, U.S. Attorney General; NANCY
     ALCANTAR, San Francisco Field Office
15   Director, U.S. Bureau of Immigration and
     Customs Enforcement; and TOBY WONG,
16   Correctional Captain, Santa Clara County,

17          Respondents.
                                         /
18   ────────────────────────────────

19                      **INTRODUCTION**

20        Samih Hussein Zabadi has been held in federal custody for the past twenty-one months

21   during deportation proceedings.  The government contends that a federal statute requires the

22   petitioner's detention.  This order holds that the Department of Homeland Security was not

23   authorized under the statute in question to arrest petitioner given the government's two-year

24   delay in seeking to take him into custody.[1]  His petition for a writ of habeas corpus is

25   **GRANTED**.  The government is **ORDERED TO RELEASE** him on the bond previously set.

26

27        [1] The immigration statutes at issue in this order address detention by the Attorney General.  After their
     enactment, however, immigration-enforcement duties were transferred from the Attorney General to the
28   Department of Homeland Security. 6 U.S.C. 251(2) (enacted 2002).  The immigration statutes have not been
     amended to reflect this change (Pet. for Writ of Habeas Corpus ¶ 9).

United States District Court

For the Northern District of California

1

**STATEMENT**

2     Petitioner is a stateless Palestinian.  He was born in Kuwait.  Because his parents were

3 Palestinian, he was not made a Kuwaiti citizen.  He has never been to Jordan, Israel or its

4 occupied lands.  Petitioner entered the United States in February 1990 with a Jordanian tourist

5 visa that expired in 1994.  He has lived here ever since.  *Zababi*, File No. A70 830 132 at

6 6 (Immigration Ct. May 28, 2004).

7     On May 9, 1996, the Immigration and Naturalization Service placed petitioner in

8 deportation proceedings on grounds that he had overstayed his visa.  In March 1997,

9 Immigration Judge Dana Leigh Marks concluded that petitioner was eligible for suspension of

10 deportation.  Immediate suspension was not available, however, due to annual caps on the

11 number granted.  Judge Marks therefore took the case under submission.  *Id.* at 1–2.

12     Before petitioner received a grant of suspension, Congress amended the immigration

13 statutes to make aliens such as petitioner ineligible, requiring an alien who is not a permanent

14 U.S. resident and seeks suspension to establish, among other things, seven years of continuous

15 presence in the United States before the initiation of deportation proceedings.  *See* 8 U.S.C.

16 1229b(a)(2).  Petitioner fell short by one year.

17     Petitioner was convicted in 2001 of committing a lewd act against a child.  He spent

18 311 days in jail. He was released December 19, 2001.  *Zababi* at 7–8 (Immigration Ct. May 28,

19 2004).

20     More than two years after his release from incarceration, agents of the U.S. Bureau of

21 Immigration and Customs Enforcement arrested petitioner during Operation Predator, a

22 program to apprehend and remove aliens convicted of sex offenses.  Petitioner was placed in

23 detention February 5, 2004.  *Zababi* at 5 (Immigration Ct. Apr. 25, 2005).  There is no evidence

24 that the agents did not know his whereabouts at any time between his release from jail and

25 Operation Predator, or that petitioner had been hiding.  In fact, it appears that the bureau could

26 have found him easily using public and law-enforcement records.  He was on probation during

27 this time, and contends that he complied fully with its terms (Pet. for Writ of Habeas Corpus ¶

28

2

United States District Court
For the Northern District of California

22).  He married his wife during this period.  *Zababi* at 7 (Immigration Ct. May 28, 2004).  For all the record shows, the agents were just not interested in him until Operation Predator.

While in detention, Judge Marks waived petitioner's inadmissibility and made him a lawful permanent resident on the basis of his marriage in 2003 to a United States citizen. *Zababi* at 9, 18 (Immigration Ct. May 28, 2004).  The Board of Immigration Appeals, however, reversed those decisions.  It held that petitioner did not merit a favorable exercise of discretion because of his child-molestation conviction.  The BIA remanded the case to Judge Marks to consider petitioner's applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture.  *Zabadi* at 2 (BIA Feb. 17, 2005).

Judge Marks then denied a bureau motion to lodge an additional ground for deportation, that petitioner was an aggravated felon.  She also denied petitioner's application for relief under the Convention Against Torture, determining that evidence did not show that he likely would be tortured in Kuwait, and ordered him deported to Kuwait.  Additionally, the immigration judge rejected the bureau's request to designate Israel and the Occupied Territories as an alternate country of deportation and vacated the prior designation of Jordan as a country of deportation. *Zabadi* at 3, 5, 9, 11 (Immigration Ct. Apr. 19, 2005).

Later that month, Judge Marks ruled that, although petitioner had been detained properly in the first instance, his "prolonged . . . detention without bond [wa]s not constitutionally proper" and found that he was not a flight risk or a danger.  She ordered the government to release him upon posting of a $2500 bond.  *Zabadi* at 4–6 (Immigration Ct. Apr. 25, 2005). His release was automatically stayed because respondents filed a notice of intent to appeal the bond decision to the BIA (Shugall Decl., Exh. 14).  This Court ruled that the automatic-stay regulation, 8 C.F.R. 1003.19(i)(2), was unconstitutional and *ultra vires* and vacated the stay. *Zabadi v. Chertoff*, No. C 05-1796, 2005 WL 1514122 at *1 (N.D. Cal. June 17, 2005).  The BIA granted respondents an emergency stay.  On July 8, 2005, the BIA reversed the immigration judge's decision.  It concluded that petitioner was subject to the Immigration and Nationality Act mandatory-detention provision and that Judge Marks therefore had no power to release him on bond (Shugall Decl., Exh. 21, 22).

3

United States District Court

For the Northern District of California

1    Petitioner and the bureau appealed the immigration judge's April 19 order.  The BIA

2    held that she erred in denying the bureau's motion to lodge an additional ground for

3    deportation.  It upheld the rulings that denied petitioner's application for relief under the

4    Convention Against Torture and that refused to designate Israel and the Occupied Territories as

5    an alternate country of deportation.  The BIA also dismissed petitioner's request for a ruling

6    that he was eligible for a waiver of inadmissibility.  *Zabadi* at 2–3 (BIA Nov. 16, 2005).

7    Petitioner appealed the BIA's rulings to the Ninth Circuit.  Pet. for Review and Mot. for Stay of

8    Deportation with Req. to Supplement Stay Mot. in 14 Days, *Zabadi v. Gonzales* (9th Cir. Nov.

9    16, 2005).  This appeal automatically stayed the order of deportation until further order of the

10   Ninth Circuit.  *See* Ninth Cir. Gen. Order 6.4(c)1.

11    Petitioner now requests that this Court rule that the detention mandated by former

12   8 U.S.C. 1252(a)(2) (1996) does not render him ineligible for bond.  Petitioner asks that the

13   Court order him released from detention upon posting the $2500 bond set by Judge Marks.

**ANALYSIS**

15    This Court may entertain a petition for a writ of habeas corpus from a person claiming to

16   be "in custody in violation of the Constitution or laws or treaties of the United States."

17   28 U.S.C. 2241(c)(3).  The parties agree that the Court has jurisdiction over petitioner's

18   detention.

19    When a court reviews the interpretation of a statute by an administrative agency, such as

20   the BIA, established canons of statutory construction apply.  For example, the words used are

21   given their ordinary meaning.  Where the intent of Congress is clearly expressed, "that is the end

22   of the matter; for the court, as well as the agency, must give effect to the unambiguously

23   expressed intent of Congress."  If the congressional intent is ambiguous, then the court must

24   defer to the agency's reasonable interpretation of the statute.  An agency's interpretation in such

25   circumstances may be overturned only if it is arbitrary, capricious or manifestly contrary to law.

26   *Chevron, U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 842, 843 & n.9, 860

27   (1984).

28

United States District Court

For the Northern District of California

1      The first question to answer in the instant case is which of two very similar statutes

2   applies.  The government states that it is detaining petitioner pursuant to 8 U.S.C. 1226(c) but

3   refers to Section 1226(c) and former 8 U.S.C. 1252(a)(2) interchangeably (Return in Opp. to

4   Pet. for Writ of Habeas Corpus 7, n.6).  Petitioner seems indifferent as well.  He contends that

5   former Section 1252(a)(2) applies but suggests there is no material difference here between the

6   provisions.

7      Prior to passage of the Immigration Reform and Immigrant Responsibility Act of 1996,

8   detention of criminal aliens following release from incarceration was governed by

9   Section 1252(a)(2), which mandated that "[t]he Attorney General shall take into custody any

10   alien convicted of [certain crimes] upon release of the alien from incarceration, [and] shall deport

11   the alien as expeditiously as possible."  The Act's prospective reach, however, was explicitly

12   limited.  Section 309(c)(1) provided that "in the case of alien who is in exclusion or deportation

13   proceedings as of [April 1, 1997] . . . the amendments made by this subtitle shall not apply, and

14   the proceedings (including judicial review thereof) shall continue to be conducted without regard

15   to such amendments."  This limitation was inapplicable to certain provisions.  They are not

16   relevant, however, to the petition.  This limitation exempted petitioner from the new law in his

17   deportation proceedings.  His removal proceeding commenced before the transition date of

18   April 1, 1997.  *See Vasquez-Zavala v. Ashcroft*, 324 F.3d 1105, 1107 (9th Cir. 2003) ("For cases

19   where deportation proceedings commenced prior to April 1, 1997 but remained ongoing on

20   April 1, 1997, IIRIRA [the Act] includes transitional rules providing that, for the most part, the

21   new provisions of IIRIRA do not apply.").  Section 1226(c) is inapplicable.  The old provision

22   — Section 1252(a)(2) — applies.

23      Section 1252(a)(2) provided (emphasis added):

24          The Attorney General shall take into custody any alien convicted
            of any criminal offense covered in section 241(a)(2)(A)(iii), (B),
25          (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for
            which both predicate offenses are covered by section
26          241(a)(2)(A)(i), *upon release of the alien from incarceration*,
            [and] shall deport the alien as expeditiously as possible.
27          Notwithstanding paragraph (1) or subsections (c) and (d) of this
            section[], the Attorney General shall not release such felon from
28          custody.

5

United States District Court

For the Northern District of California

1   Section 1252(a)(2) directed the Attorney General to detain a criminal alien "*upon release of the*

2   *alien from incarceration*."  It did not authorize a taking into custody more than two years after

3   the individual had been released from incarceration.  Because the Department of Homeland

4   Security declined to take petitioner into custody upon release from incarceration or within a

5   reasonable period thereafter, Section 1252(a)(2) did not authorize petitioner's later arrest and

6   detention.

7         Two district court decisions within this circuit concluded that a long delay makes

8   Section 1252(a)(2) or Section 1226(c) inapplicable.  *Pastor-Camarena v. Smith* held that "[t]he

9   plain meaning of this language is that it applies immediately after release from incarceration,

10  not to aliens released many years earlier."  977 F. Supp. 1415, 1417 (W.D. Wash. 1997) (alien's

11  detention began at least ten years after release from incarceration); *see also Quezada-Bucio v.*

12  *Ridge*, 317 F. Supp. 2d 1221, 1224 (W.D. Wash. 2004) (holding that 8 U.S.C. 1226(c), which

13  substitutes "when . . . released" for "upon release," does not apply to a petitioner who was

14  detained three years after release from incarceration).  "[I]f Congress had intended for

15  mandatory detention to apply to aliens at any time after they were released, it easily could have

16  used the language 'after the alien is released' or 'regardless of when the alien is released,' or

17  other words to that effect.  Instead, Congress chose the word 'when,' which connotes a much

18  different meaning." *Quezada-Bucio*, 317 F. Supp. at 1231.[2]  Similarly, *Grodzki v. Reno* held

19  that the "language 'upon release . . . from incarceration' at least implies that custody commence

20  within a reasonable time after release from incarceration."  950 F. Supp. 339, 342 (N.D. GA.

21  1996).  This Court is aware of no court decisions to the contrary.

22        Respondents cite *Rojas*, in which the BIA held that a criminal alien was subject to

23  mandatory detention under 8 U.S.C. 1226(c) even though he was not immediately taken into

24  custody when released from criminal incarceration.  23 I. & N. Dec. 117 (BIA 2001) ( "[W]e

25  discern that the statute as a whole is focused on the removal of criminal aliens in general, not

26  just those coming into Service custody 'when . . . released' from criminal incarceration.").

27

28      [2] *Quezada-Bucio* interpreted Section 1226(c).  It therefore analyzed the language of that subsection
("when . . . released")  rather than the language of Section 1252(a)(2) ("upon release").

1   *Rojas*, however, concerned an alien detained by immigration authorities *only two days* after he

2   was freed from incarceration for his criminal conviction.  *Ibid.*  Here, by contrast, petitioner was

3   free for more than two years before he was detained.  Two days is nothing like two years.  Thus,

4   *Rojas* did not consider the point raised here.  Even if the statute were ambiguous, therefore, the

5   *Rojas* decision would not be entitled to deference.  *Rojas* did not even consider and address the

6   point of statutory interpretation controlling in this order.  *See Gen. Elec. Co. v. Gilbert*, 429

7   U.S. 125, 142 (1976) (holding that the amount of deference due an administrative decision "will

8   depend upon the thoroughness evident in its consideration").  In addition, the BIA's *Zabadi*

9   decisions were unpublished.  They therefore are neither precedent nor definitive agency

10  interpretations.  *See Chan v. Reno*, 113 F.3d 1068, 1072–73 (9th Cir. 1987) (cautioning against

11  use of unpublished BIA decisions to define the agency's interpretation of a statute); 8 C.F.R.

12  1003.1(g) (stating that published decisions "shall serve as precedents in all proceedings

13  involving the same issue or issues"); BIA, Practice Manual at 8–9 (June 15, 2004)

14  ("Unpublished decisions . . . are *not* considered precedent for unrelated cases.").

15          This order holds that the Department of Homeland Security need not act immediately

16  but has a reasonable period of time after release from incarceration in which to detain.  The

17  government's contention, however, that it can wait, without good cause, for more than two

18  years before detaining an alien is unreasonable and will not be followed by this order.  As

19  recognized even by the BIA, "[t]he statute does direct the attorney general to take custody of

20  aliens immediately upon their release from criminal confinement."  *Rojas*, 23 I. & N. 117.  The

21  Court thus concludes that the petition of writ for habeas corpus must be granted and orders

22  petitioner released pursuant to the bond set by Judge Marks.  The interpretation of Section

23  1252(a)(2) by the BIA is not entitled to deference because the congressional intent to authorize

24  detention only immediately upon release, or within a reasonable period thereafter, is

25  unambiguous.

26                        *              *              *

27          Given that the BIA has recently affirmed the removal order, the government argues that

28  the foregoing discussion has been mooted.  It alleges that petitioner is no longer being detained

United States District Court
For the Northern District of California

7

1   pursuant to Section 1252(a)(2) but instead pursuant to yet a different provision,

2   Section 1231(a)(2), which covers detention during the "removal period" *after* a deportation

3   order. (The government claims that Section 1252(a)(2) applies only to aliens awaiting a BIA

4   decision on whether they will be deported. *See* 8 U.S.C. 1252(a)(1) ("[p]ending a determination

5   of deportability").) The government then argues that petitioner is no longer awaiting such a

6   decision because his deportation order became final upon the BIA dismissal of his appeal a few

7   days ago. *See* 8 C.F.R. 1241.1 (making order of removal final upon dismissal of appeal by the

8   BIA); 8 U.S.C. 1101(a)(47)(B) (stating that an "order of deportation" becomes final upon "a

9   determination by [BIA] affirming it). The government argues that because the detention order

10  is final, petitioner is subject to mandatory detention pursuant to Section 1231(a)(2) while he

11  awaits removal. Significantly, this last step in the argument is incorrect. Section 1231(a)(2),

12  which requires detention pending removal, applies only "[d]uring the removal period."

13  However, the "removal period" in petitioner's case will not begin until the Ninth Circuit issues

14  its "final order" in his case. 8 U.S.C. 1231(a)(1)(B)(ii); *see also Wang v. Ashcroft*, 320 F.3d

15  130, 147 (2d Cir. 2003) ("[W]here a court issues a stay pending its review of an administrative

16  removal order, the alien continues to be detained under [Section 1226] until the court renders its

17  decision.").

18          Mandatory detention is simply not authorized in petitioner's case by Section 1231(a)(2)

19  or by Section 1252(a)(2). It is unnecessary to reach the constitutional issues. This ruling, of

20  course, is without prejudice to detention under former Section 1252(a)(1), which authorizes

21  "detention upon warrant of the Attorney General."

22                                      **CONCLUSION**

23          For the foregoing reasons, the petition for a writ of habeas corpus is **GRANTED**.

24  Petitioner shall be released immediately pursuant to the bond previously set. The effectiveness

25

26

27

28

8

United States District Court
For the Northern District of California

1    of this order is stayed until November 30 to allow the government to seek emergency relief

2    from the Ninth Circuit.

3

4         **IT IS SO ORDERED.**

5    Dated:  November 22, 2005.

                                  WILLIAM ALSUP
                                   UNITED STATES DISTRICT JUDGE