**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAMIH HUSSEIN ZABADI,

    Petitioner,

  v.

MICHAEL CHERTOFF, Secretary, Department of Homeland Security; ALBERTO GONZALES, U.S. Attorney General; NANCY ALCANTAR, San Francisco Field Office Director, U.S. Bureau of Immigration and Customs Enforcement; and TOBY WONG, Correctional Captain, Santa Clara County,

    Respondents.

No. C 05-03335 WHA

**ORDER DENYING MOTION TO AMEND OR ALTER THE JUDGMENT AND VACATING HEARING**

**INTRODUCTION**

Respondents Michael Chertoff, Alberto Gonzales, Nancy Alcantar and Toby Wong move, pursuant to Federal Rule of Civil Procedure 59, for alteration or amendment of the judgment against them. Respondents have not satisfied their burden of presenting newly discovered evidence, demonstrating clear error or identifying an intervening change in law. The motion therefore is **DENIED** and the hearing **VACATED**.[*]

---

[*] The motion refers only to "respondents" generally and does not mention Toby Wong even in the case caption. This order, however, is binding equally on Mr. Wong and on the other respondents.

**STATEMENT**

Petitioner Samih Hussein Zabadi is a stateless Palestinian. He has been in deportation proceedings since 1996, when he was accused of overstaying a tourist visa. The government tentatively waived deportation. It later revoked that decision when Congress passed a law making aliens such as petitioner ineligible for waivers because they had not lived in the United States seven or more continuous years before the initiation of deportation proceedings. *See* 8 U.S.C. 1229b(a)(2).

Petitioner was convicted in 2001 of committing a lewd act against a child. He spent 311 days in jail and was released December 19, 2001. More than two years later, the Bureau of Immigration and Customs Enforcement arrested him as part of a program to apprehend and remove aliens convicted of sex offenses. Petitioner was placed in detention February 5, 2004. He was held from then until this Court ordered his release on bond, effective November 30, 2005.

The government argued that its detention of petitioner was proper pursuant to former 8 U.S.C. 1252(a)(2) (1996), which required the "Attorney General [to] take into custody any alien convicted of any criminal offense [covered by certain statutory provisions] upon release of the alien from incarceration, [and] [] deport the alien as expeditiously as possible." This Court ordered petitioner's release because the government was not authorized to arrest petitioner when it did, two years after his release from incarceration, given the statute's language authorizing detention only "*upon release* of the alien from incarceration," Section 1252(a)(2). Judgment was entered against respondents and in favor of petitioner.

**ANALYSIS**

Rule 59 allows, upon motion, for a court to open a judgment, amend its findings of fact and law (or make entirely new ones) and direct entry of a new judgment. Such a motion must be denied unless there are "highly unusual circumstances," the court committed clear error, the movant presented newly discovered evidence or the law changed after judgment. A Rule 59 motion "may not be used to raise arguments or present evidence for the first time when they

could reasonably have been raised earlier in the litigation." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003).

Respondents have not presented any new evidence or identified any intervening changes of law. The only argument on which they base their motion is that the Court mistakenly concluded that they had waited more than two years before arresting petitioner. In fact, they claim, they did not have authority under Section 1252(a)(2) to arrest petitioner until December 23, 2003 — the date the state court of appeal affirmed his conviction. They contend, therefore, that they waited only about six weeks until arresting petitioner, a delay arguably within the window of time allowed by Section 1252(a)(2).

Respondents advance this argument for the first time. They could have advanced it earlier. On June 3, 2005, they first provided the Court with a copy of the state court of appeal decision and made a note of it in their brief opposing an earlier petition by Mr. Zabadi. *See* Return in Opp. to Pet. for Writ of Habeas Corpus at 2 and Olsen Decl. (June 16, 2005), Exh. D, *Zabadi v. Chertoff*, No. C 05-1796 WHA, 2005 WL 1514122 (N.D. Cal., pet. granted June 17, 2005). They cited the state court of appeal decision again, and quoted extensively from it, in their briefing and evidence submitted in connection with the instant case (*see* Return in Opp. to Pet. for Writ of Habeas Corpus at 3 and Olsen Decl. ¶ 6 (Sept. 16, 2005), Exh. D). Respondents thus may not properly raise this argument now. This order, however, does not deny the motion only on that basis.

Respondents argue that *Grageda v. INS*, 12 F.3d 919 (9th Cir. 1993), supports their contention that detention was not authorized pursuant to Section 1252(a)(2) until petitioner had exhausted his direct appeal right. In *Grageda*, a judge ordered an alien's deportation on grounds that he had committed a crime despite the alien's pending petition for a writ of coram nobis, which, if granted, would have expunged the conviction. The Board of Immigration Appeals affirmed. The Ninth Circuit upheld the deportation because the alien's conviction was final at the time he was ordered deported, notwithstanding the pending writ application. The Ninth Circuit stated generally that a "criminal conviction may not be considered by an

[immigration judge] until it is final" and that a conviction is final only when the direct appeal right is exhausted or expires. *Grageda*, 12 F.3d at 921.

*Grageda*'s holding does not apply here. The question there was at what point the United States may hold an alien in deportation/removal proceedings fully responsible for his crime. In the instant case, the question is when the United States may *detain* someone *pending* such deportation proceedings. Respondents offer no reason to transmogrify the *Grageda* holding to fit the instant case. They advance no justification for their apparent position that Section 1252(a)(2), which allows for detention "upon release . . . from incarceration," must be qualified to allow detention *only* when the conviction is final.

Respondents also turn in vain to *Pino v. Landon*, 349 U.S. 901 (1955), a decision which states, in its entirety: "On the record here we are unable to say that the conviction has attained such finality as to support an order of deportation within the contemplation of Section 241 of the Immigration and Nationality Act, 8 U.S.C. 1251. The judgment is reversed." *Pino v. Landon*, 349 U.S. at 901. *Pino v. Landon* held simply that a conviction was not final if the sentence had been revoked, thus permitting the possibilities that a sentence would later be imposed and, in turn, the alien would have a right to appeal the sentence. *See Pino v. Nicolls*, 215 F.2d 237, 240, 242 (1st Cir. 1954); *rev'd sub nom. Pino v. Landon*, 349 U.S. 901 (1955). Just as with *Grageda*, the court was addressing only when a conviction became final for purposes of making final deportation decisions. It thus has no application here.

The plain meaning of Section 1252(a)(2) does not require that the conviction become final before detention. It requires only that the person have been convicted and then released from incarceration. For this reason alone, the motion would be denied on grounds that the judgment was not clearly erroneous.

But there is another reason. It is a prudent safeguard to ensure that a conviction is final before using it as the basis for deportation, a drastic consequence that "can be the equivalent of banishment or exile," *Delgadillo v. Carmichael*, 332 U.S. 388, 391 (1947). Such a protection adheres to the fundamental rule that immigration statutes, because of their potentially harsh

4

penalties, are to be narrowly construed in favor of the alien. *See Tan v. Phelan*, 333 U.S. 6, 10 (1948) ("We resolve the doubts in favor of that [more lenient] construction because deportation is a . . . penalty. . . . [W]e will not assume that Congress meant to trench on his freedom beyond that which is required by the narrowest of several possible meanings of the words used."). No similarly drastic result ensues from detention. There is thus no need for the same degree of protection.

Furthermore, the rule suggested by respondents would thwart one of the effects of Section 1252(a)(2). The enactment prevented dangerous criminals from disappearing from view while a near-certain deportation was pending. Such fugitives thus could have delayed or prevented their actual removal from our midst. If the government had to wait until the conviction became final, and therefore did not always pick them up as they walked out of the prison gates, such people would have greater opportunity to abscond.

### CONCLUSION

Because the Court's judgment was not clearly erroneous, and because respondents presented no other ground for relief, the motion for amendment or alteration of the judgment is **DENIED**. The hearing on the motion is **VACATED**.

**IT IS SO ORDERED.**

Dated: January 24, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE